UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN McCOY, | ) | |
| | ) | |
| Petitioner, | ) | 15 C 7948 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| JEFF KORTE, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>**

Stephen McCoy, who is serving consecutive ten- and fifteen-year terms in Illinois state prison for attempted first degree murder and aggravated battery with a firearm, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. McCoy seeks habeas relief on the grounds that the trial court unconstitutionally coerced the verdict by informing the jury that it could be sequestered, and that his trial and post-conviction attorneys were constitutionally ineffective for stipulating to certain facts and for failing to obtain a medical expert who could have cast a different light on those facts. McCoy's petition is denied, and the court will not issue a certificate of appealability.

**Background**

A federal habeas court presumes that the state courts' factual findings are correct unless they are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Jean-Paul v. Douma*, 809 F.3d 354, 360 (7th Cir. 2015) ("A state court's factual finding is unreasonable only if it ignores the clear and convincing weight of the evidence.") (internal quotation marks omitted); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012) ("We give great deference to state court factual findings. After AEDPA, we are required to presume a state court's account of

1

the facts correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.") (internal quotation marks omitted). The Appellate Court of Illinois is the last state court to have adjudicated McCoy's case on the merits. *People v. McCoy*, 2014 IL App (1st) 123279-U (Ill. App. Oct. 30, 2014) (reproduced at Doc. 18-7); *People v. McCoy*, 939 N.E.2d 950 (Ill. App. 2010). The following sets forth the facts as that court described them, as well as the procedural background of the state criminal and post-conviction proceedings.

### A.     Factual Background and Trial

McCoy shot Ernest Anderson and Curtis Chatman and was charged with two counts of attempted first-degree murder, 720 ILCS 5/8-4, 9-1(a)(1), and two counts of aggravated battery with a firearm, 720 ILCS 5/12-4.2(a)(1). 939 N.E.2d at 951. The testimony at McCoy's trial presented conflicting accounts of the events preceding the shootings. *Ibid*. The prosecutor submitted that McCoy saw Anderson, called his name, and then, unprovoked, shot both him and Chatman, who was standing nearby. *Ibid*. McCoy submitted that he shot the two men in self-defense after Anderson, against whom McCoy's sister had testified in a murder trial eight years earlier, brandished a weapon. *Ibid*.

It was undisputed that McCoy shot the two men, *ibid*., and the parties stipulated to a description of Anderson's and Chatman's wounds by Don Fishman, the emergency room physician who treated them. Doc. 18-16; Doc. 18-5 at ¶¶ 16-18. The stipulations stated that Anderson suffered "a through and through gunshot wound to his right shoulder," with one wound "present in the back upper right shoulder area" and a second "in [the] front upper right shoulder area." Doc. 18-16 at ¶¶ 4-5. The actual stipulations regarding Chatman are not in the record, but McCoy's post-conviction counsel's statement of facts reports that the stipulations

referenced two wounds, one "in the back of Chatman's head between the base of [the] skull and [the] lower neck," and the second "in the back of his head beneath the left ear." Doc. 18-5 at ¶ 17.

After hearing closing arguments and the court's instructions, the jury began deliberations at approximately 1:00 p.m. on September 27, 2007. 939 N.E.2d at 952. That afternoon, the jury sent two notes to the court, one asking for the "legal definition of intent to kill an individual," and the other for transcripts of McCoy's, Anderson's, and Chatman's testimony. *Ibid*. The court and the parties formulated a response to the first request and sent it to the jury, and then sent the transcripts to the jury. *Ibid*. At approximately 8:00 p.m., the court called the jury into the courtroom, leading to the following colloquy:

> THE COURT: Let the record reflect we are in open court with the 12 jurors, defense attorney, the State's Attorney, and [defendant]. The time is now about 8:00 o'clock [*sic*]. Ms. Dohl, are you the foreperson?
> 
> FOREPERSON DOHL: Here.
> 
> THE COURT: The jury is still deliberating on their verdict?
> 
> FOREPERSON DOHL: Yes.
> 
> THE COURT: It's 8:00 o'clock [*sic*] now. You've been deliberating for about seven hours. What I'm going to do is I'm going to call it quits for the night. So what we're going to do is my sheriffs have made arrangements, we're going to take you to a hotel and you'll be able to spend the night in the hotel and you will come back and deliberate in the morning.
> 
> [FOREPERSON] DOHL: Can you give us another half hour?
> 
> JURORS: We're close.
> 
> A JUROR: If we're not able to leave to go home, I have no way to contact a number of folks I need to contact before the morning.
> 
> THE COURT: All right. What I'm going to do, I'm going to bring you back in the jury room for a second. I'll bring you back out in about two minutes, okay? Go with the sheriff.

3

*Id*. at 952-53 (brackets in original). The court and the parties, outside the jury's presence, then discussed how to proceed:

> THE COURT: My inclination is just to sequester this jury right now and I'd like to hear what everybody thinks about that. I mean I can let them continue to deliberate, it doesn't really matter to me. I don't want to force a verdict on this matter. They are saying they're close. What does each side—each side, do you want to say anything? What's your position on this?
>
> MR. MORASK [defense attorney]: I would ask they be sequestered at this time, Judge. I mean that whenever a jury is told that potentially they're going to be staying, there's always the concern regarding whether a verdict is going to come back because they're told that they're going to stay or not. And I know that's not the intention of this court, but I would ask that they be sequestered at this time.
>
> MS. CHEVLIN [Assistant State's Attorney]: Judge, I would actually ask that they be allowed at least some time. It wasn't just one person that said that. They all, several people volunteered that they were close without any prompting by the court. I certainly don't think they should be given an extended amount of time.
>
> THE COURT: They're not going to be given an extended amount of time. I don't want to tell them if they don't come back in fifteen minutes I'm going to sequester them because then you know what's going to happen.

*Id*. at 953. The court then called the jury back into the courtroom and said:

> Okay. Ladies and gentlemen, I'll give you some time to continue to deliberate. I'm not going to give you a set time, and the next time I pull you out, you will be sequestered if there's not a verdict. Understand that? I'm not telling you what you need to do. This is a fact of life. I understand that it will be inconvenient to sequester you, but if it is the right thing to do, it is the right thing to do. Do you understand the importance of the decision you're making? Okay, you can return to deliberate.

*Ibid*.

Less than a half hour later, at approximately 8:30 p.m., the jury returned its verdict, finding McCoy guilty of the attempted murder of Anderson and the aggravated battery of Anderson and Chatman, but not guilty of the attempted murder of Chatman. *Ibid*. The court merged the convictions for the attempted murder and aggravated battery of Anderson, and

4

sentenced McCoy to fifteen years' imprisonment for the attempted murder of Anderson and ten years' imprisonment for the aggravated battery of Chatman, to be served consecutively. *Ibid*.

B.    **Direct Appeal and Post-Conviction Review**

McCoy appealed, arguing that: (1) the trial court failed to conduct a proper *voir dire* of the jury in violation of Illinois Supreme Court Rule 431(b); and (2) the court's warning to the jury that it would be sequestered improperly coerced the verdict. *Id*. at 951; Doc. 18-1 at 22-44. McCoy did not on direct appeal utter the term "due process," but his brief twice cited *Jenkins v. United States*, 380 U.S. 445, 446 (1965), for the proposition that a "coerced jury verdict cannot stand," relied on one Illinois decision because it cited "several United States Supreme Court cases," and expressly noted that "this constitutional issue is preserved." Doc. 18-1 at 22, 28.

The Appellate Court of Illinois affirmed, finding that McCoy had forfeited the *voir dire* argument by not making a contemporaneous objection at trial or raising it in his post-trial motion. 939 N.E.2d at 951, 953-55. As for the jury coercion claim, the appellate court determined on an abuse of discretion standard that "considering the totality of the circumstances, there is no indication that the court's sequestration announcement actually interfered with the jury's deliberations or that a minority of jurors were being pressured to change their verdicts." *Id*. at 955-58. McCoy then filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois, pressing both the *voir dire* and sequestration claims. Doc. 18-4. The PLA was denied. *People v. McCoy*, 949 N.E.2d 1101 (Ill. 2011).

Meanwhile, McCoy filed a post-conviction petition in state trial court pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq*. Doc. 18-10 at 15-23. The petition argued that his trial attorney was ineffective for stipulating to the emergency room physician's testimony about Anderson's gunshot wounds, contending that the stipulation was

5

"highly suggestive" and, because it did not indicate which were entry wounds and which were exit wounds, "left the prejudicial effect for the trier of fact" that the gunshots "penetrated by entering the back area and exiting through the front area" of both men. *Id*. at 18-19. This, McCoy asserted, undermined his claim that he had fired in self-defense. *Ibid*.

The trial court denied the petition, *id*. at 32-38, and McCoy appealed. On appeal, McCoy's appointed counsel moved to withdraw, noting that the "stipulation was inconclusive about whether the victims were attacking Petitioner or running away from him," that the "decision to stipulate is a matter of trial strategy," and that "[t]here is no testimony about where the bullets entered the victims." Doc. 18-5 at ¶¶ 32, 34. The state appellate court granted the motion to withdraw and affirmed the trial court's judgment, finding "no issues of arguable merit for review." *People v. McCoy*, 2014 IL App (1st) 123279-U, at 2 (Ill. App. Oct. 30, 2014) (reproduced at Doc. 18-7). McCoy filed a PLA pressing the ineffective assistance claim, Doc. 18-8, which the state supreme court denied. *People v. McCoy*, 32 N.E.3d 676 (Ill. 2015).

McCoy timely filed the present federal habeas petition on July 22, 2015. Doc. 1 at 7.

## Discussion

McCoy's habeas petition asserts two grounds for relief: (1) that the trial judge's raising the prospect of sequestration coerced the jury's verdict in violation of the Due Process Clause; and (2) that his lawyers were constitutionally ineffective for stipulating to Fishman's descriptions of Anderson's and Chatman's wounds and failing to obtain a medical expert who could prove, contrary to what McCoy believes the stipulations suggested, that McCoy shot Anderson in his front rather than his back. Doc. 1 at 5. Both claims fail on the merits.

## I. Due Process Jury Coercion Claim

Federal habeas relief is available only "on the ground that [the petitioner] is in custody in violation of the Constitution or laws … of the United States." 28 U.S.C. § 2254(a); *see Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015) ("Gladney presents no federal constitutional issue and no ground upon which we could grant habeas relief because a federal court may not issue the writ on the basis of a perceived error of state law.") (internal quotation marks omitted). The Warden contends that McCoy's jury coercion claim does not allege a constitutional violation. Doc. 17 at 5. This argument fails.

The Seventh Circuit decades ago recognized that a defendant's assertion that the trial judge improperly threatened sequestration presents a claim under *Allen v. United States*, 164 U.S. 492 (1896), that the judge attempted to coerce jurors in the minority to give undue weight to the majority's views. *United States v. Chaney*, 559 F.2d 1094, 1098 & n.6 (7th Cir. 1977) (holding that a supplemental jury instruction that a jury can understand to mean "that they must reach a verdict to avoid being locked up until 9:30 a.m." the next day was an impermissible *Allen* charge); *see also United States v. Herrera*, 704 F.3d 480, 488 (7th Cir. 2013) (examining an *Allen* charge); *United States v. Blitch*, 622 F.3d 658, 668 (7th Cir. 2010) (same). Because they have the potential for "'blasting' verdicts out of juries," *Allen* "charges have also been known as 'the dynamite charge, the third degree instruction, the shotgun instruction, or the nitroglycerin charge.'" *United States v. Zabriskie*, 415 F.3d 1139, 1148 & n.13 (10th Cir. 2005) (quoting *United States v. Bailey*, 468 F.2d 652, 666 (5th Cir. 1972)).

Earlier Seventh Circuit precedents on *Allen* charges arose from federal convictions and invoked the court's supervisory power, *see Chaney*, 559 F.2d at 1098 (noting that in previous *Allen* charge decisions, the Seventh Circuit had "act[ed] under this Court's supervisory power

7

rather than as a constitutional imperative"); *United States v. Silvern*, 484 F.2d 879 (7th Cir. 1973); *United States v. Brown*, 411 F.2d 930 (7th Cir. 1969); "none of th[o]se decisions expressly discussed supplemental charges in terms of a denial of due process." *Ortiz v. Duckworth*, 692 F.2d 39, 42 (7th Cir. 1982). But the Seventh Circuit has more recently observed that "a primary concern driving anxiety over dynamite charges is the due process rights of the parties to a fair trial." *United States v. Collins*, 223 F.3d 502, 509 (7th Cir. 2000). Other circuits likewise have recognized that *Allen* charges may, depending on context and circumstances, violate the federal Constitution. *See United States v. Haynes*, 729 F.3d 178, 192 (2d Cir. 2013) ("An *Allen* charge is unconstitutional if it is coercive in the context and circumstances under which it is given."); *Valentine v. United States*, 488 F.3d 325, 335-36 (6th Cir. 2007); *see also Wong v. Smith*, 562 U.S. 1021, 1023 (2010) (Alito, J.) (noting in a dissent from the denial of certiorari that "coercive [jury] instructions are unconstitutional"). Accordingly, McCoy's petition raises a federal constitutional claim.

The Warden finds no more purchase with his next argument, that McCoy procedurally defaulted the jury coercion claim. Doc. 17 at 5. A federal habeas claim is "procedurally defaulted when a petitioner fails to 'fairly present' his claim to the state courts." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). "To fairly present his federal claim, a petitioner must assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Ibid*. (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). That means that the petitioner, on either direct or post-conviction review, must have "present[ed] the contention to each level of the state judiciary." *Bland v. Hardy*, 672 F.3d 445, 449 (7th Cir. 2012). Accordingly, "[a] procedural default occurs where a habeas petitioner has exhausted his state court remedies without properly asserting his federal

claim at each level of state court review." *Crockett v. Hulick*, 542 F.3d 1183, 1192 (7th Cir. 2008) (internal quotation marks omitted). In Illinois, that specifically requires presenting the claim to the Supreme Court of Illinois. *See Boerckel*, 526 U.S. at 845-46. Finally, the petitioner must "have made clear [to the state courts] that it was indeed a federal constitutional claim that he was pressing." *McKinley v. Butler*, 809 F.3d 908, 909 (7th Cir. 2016) (citing *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), and *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)).

Contrary to the Warden's submission, McCoy raised the jury coercion claim as a federal constitutional claim on direct appeal. McCoy's appellate brief argued that "this constitutional issue [of jury coercion] is preserved." Doc. 18-1 at 28. True, that assertion was sandwiched between citations to several state court decisions, but McCoy began the relevant discussion by invoking the Supreme Court's decision in *Jenkins*. *Jenkins* affirmed that "the principle that jurors may not be coerced into surrendering views conscientiously held is so clear as to require no elaboration," 380 U.S. at 446, and the Seventh Circuit has recognized *Jenkins* as setting forth the Supreme Court's views regarding impermissible jury coercion. *See Blitch*, 622 F.3d at 668. McCoy's brief also cited *People v. Cole*, 298 N.E.2d 705, 711 (Ill. 1973)—which, as he noted, itself refers to "several United States Supreme Court cases"—for the proposition that the "right to trial by an impartial tribunal is so basic that a violation of the right requires a reversal." Doc. 18-1 at 22, 28. That was a direct quote from *Cole*, appearing in the midst of a discussion of the "constitutional right to a trial by a fair and impartial jury" that relied on *Chapman v. California*, 386 U.S. 18 (1967), *Turner v. Louisiana*, 379 U.S. 466 (1965), and *Tumey v. Ohio*, 273 U.S. 510 (1927), all of which concern federal due process. *Cole*, 298 N.E.2d at 711. Particularly because the Seventh Circuit has urged federal courts to "avoid hypertechnicality" when applying the fair presentment standard, *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001), McCoy's

9

citations to *Jenkins* and *Cole* left the state appellate court more than "sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013). And because McCoy pressed the same jury coercion claim in his PLA, the state supreme court was likewise alerted to the issue.

So that claim is not procedurally defaulted. Still, "[f]ederal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1) …; or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016); *Gilbert v. McCulloch*, 776 F.3d 487, 491-92 (7th Cir. 2015). Although McCoy does not specify which of these grounds he invokes, the court will broadly construe his petition and consider each ground.

With respect to § 2254(d)(1), a state court's decision is "contrary to" clearly established federal law if the state court "applies the wrong legal standard established by Supreme Court precedent or decides a case differently than the Supreme Court on materially indistinguishable facts." *Kamlager v. Pollard*, 715 F.3d 1010, 1015 (7th Cir. 2013) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "Alternatively, a state court decision involves an 'unreasonable application of' federal law if the state court 'correctly identifies the governing legal principle … but unreasonably applies it to the facts of the particular case.'" *Kamlager*, 715 F.3d at 1015-16 (citing *Bell*, 535 U.S. at 694). To obtain relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond

any possibility for fairminded disagreement." *White v. Wheeler*, 136 S. Ct. 456, 460 (2015). The "lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can apply such law," *Gilbert*, 776 F.3d at 491 (quoting *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013)), but "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] [Supreme] Court's precedents." *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (internal quotation marks omitted).

The relevant decision for purposes of this court's assessment under § 2254(d) is "the decision of the last state court to rule on the merits of [the petitioner's] claim," *Stern*, 812 F.3d at 609, which for McCoy's jury coercion claim was the state appellate court's opinion on direct appeal. 939 N.E.2d 950. When considering that claim, *id*. at 955-58, the appellate court did not directly engage with Supreme Court case law, and for good reason: the Supreme Court has never held that notifying the jury of the possibility of *sequestration* violates the Constitution, and nor has it established a governing rule for such situations. This is fatal to McCoy's habeas claim, as "there can be no Supreme Court precedent to be contradicted or unreasonably applied, and therefore no habeas relief, when there is no Supreme Court precedent on point." *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (internal quotation marks omitted); *see also Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the … conduct of the kind involved here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established federal law.'"); *Hanson v. Beth*, 738 F.3d 158, 162-63 (7th Cir. 2013).

McCoy's claim would fail even if this court were to more broadly consider the Supreme Court's precedents on *Allen* charges. For one, those precedents are undeveloped. Dissenting from the denial of certiorari in a habeas case considering an *Allen* charge, Justice Alito noted:

> The clearly established law relevant to this case is sparse. Just one of this Court's decisions, *Lowenfield v. Phelps*, 484 U.S. 231 (1988), has addressed the constitutional rule against coercive jury instructions. And *Lowenfield* held only that, on the totality of the circumstances present there, no unconstitutional coercion resulted. *Id*. at 241. … As a result, the clearly established law in this area provides very little specific guidance. About all that that can be said is that coercive instructions are unconstitutional, coerciveness must be judged on the totality of the circumstances, and the facts of *Lowenfield* (polling a deadlocked jury and reading a slightly modified *Allen* charge) were not unconstitutionally coercive.

*Wong*, 562 U.S. at 1023. Other than in *Jenkins*, where the judge demanded that the jury "reach a decision" in response to a note stating that the jurors were "unable to agree upon a verdict," 380 U.S. at 446, the Supreme Court has repeatedly upheld the validity of supplemental jury instructions designed to aid the jury in reaching a decision. *See Blueford v. Arkansas*, 132 S. Ct. 2044, 2051 (2012) (rejecting a challenge to a supplemental jury instruction requiring the jurors to consider the charged offenses one at a time, but allowing them to revisit prior votes, reasoning that "'the very object of the jury system,' after all, 'is to secure unanimity by a comparison of views, and by arguments among the jurors themselves'") (quoting *Allen*, 164 U.S. at 501); *Yeager v. United States*, 557 U.S. 110, 114 (2009) (noting, without disfavor or discussion, that a trial judge had given an *Allen* charge); *Arthur Andersen LLP v. United States*, 544 U.S. 696, 702 (2005) (same); *Early v. Packer*, 537 U.S. 3, 6 (2002) ("California law, *unlike federal law*, prohibits the giving of a so-called *Allen* … charge.") (emphasis added); *Jones v. United States*, 527 U.S. 373, 382 n.5 (1999) ("We have … approved of the use of a supplemental charge to encourage a jury reporting itself as deadlocked to engage in further deliberations, even capital sentencing juries.") (citing *Allen*, 164 U.S. at 501, and *Lowenfield*, 484 U.S. at 237-41); *see also*

12

*Lowenfield*, 484 U.S. at 237-41 (explaining that while most *Allen* charges are permissible, they can be unconstitutionally coercive depending on the circumstances). Given this backdrop, it cannot be said that the state appellate court's decision was contrary to or an unreasonable application of clearly established Supreme Court precedent.

Further, *Allen* itself held that an *Allen* charge "was not reversible error" in a capital case, where "the qualitative difference between a capital sentence and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Lowenfield*, 484 U.S. at 237, 238-39 (internal quotation marks omitted); *see also Jones*, 527 U.S. at 382 n.5. McCoy's case is not a capital case. And although Justice Alito's dissent from the denial of certiorari in *Wong* is not controlling precedent, it summarized Supreme Court case law on coerciveness as depending on "the totality of the circumstances," 562 U.S. at 1023—precisely the test that the state appellate court applied to McCoy's claim. 939 N.E.2d at 955 ("The test for determining whether the trial court's comments to the jury were improper in this context is whether, under the totality of the circumstances, the language used by the court actually interfered with the jury's deliberations and coerced a guilty verdict."). This confirms that the state appellate court's decision was not contrary to clearly established Supreme Court precedent. *See Ruvalcaba v. Chandler*, 416 F.3d 555, 561 (7th Cir. 2005) ("The Appellate Court of Illinois recognized that it was required to evaluate the totality of the circumstances surrounding Mr. Ruvalcaba's confession and undertook that task. Therefore, the court was not acting 'contrary to' clearly established law.") (citation omitted); *see also Adams v. Bertrand*, 453 F.3d 428, 432 n.4 (7th Cir. 2006) ("[A] state court need not cite to the applicable Supreme Court case annunciating the standard, as long as the state court precedent cited agrees with it."). It also further supports the conclusion that the state court's decision was not an unreasonable application of clearly

established Supreme Court precedent. *See Searcy v. Jaimet*, 332 F.3d 1081, 1091 (7th Cir. 2003) ("A federal court's deference to the state court's resolution of the issues involved is even more important when such resolution requires the weighing of factors against one another: when the constitutional question is a matter of degree, rather than of concrete entitlements, a reasonable decision by the state court must be honored.") (internal quotation marks omitted).

Nor was the state appellate court's factfinding unreasonable under § 2254(d)(2). "A state court's factual finding is unreasonable only if it ignores the clear and convincing weight of the evidence." *Jean-Paul*, 809 F.3d at 360 (internal quotation marks omitted). But here there is no dispute about the facts relevant to the jury coercion claim: the appellate court's opinion reproduces verbatim the exchanges between the judge, the jury, and the parties set forth in McCoy's direct appeal brief. *Compare McCoy*, 939 N.E.2d at 952-53, *with* Doc. 18-1 at 19-21. McCoy could hardly challenge as unreasonable a factual finding that so closely mirrors his own, and in any event the facts on which the court relied have never been in dispute.

## II.    Sixth Amendment Ineffective Assistance of Counsel Claim

McCoy claims that he received ineffective assistance from both his trial attorney and his post-conviction attorney. He contends that his trial counsel was ineffective for stipulating to Fishman's description of Anderson's and Chatman's wounds rather than obtaining a "medical expert" who "could potentially prove Mr. [A]nderson was sho[]t in [his] front." Doc. 1 at 5. McCoy argues that such an expert would have bolstered his assertions that Anderson, at least, posed a threat to McCoy and was not fleeing at the time of the shooting. And McCoy asserts that his post-conviction counsel was aware that McCoy was seeking such an expert but did not obtain one. *Ibid*.

14

McCoy presented the claim both in his post-conviction appeal, Doc. 18-10 at 16-22, and his post-conviction PLA, Doc. 18-8, so the claim is not procedurally defaulted. As with the jury coercion claim, McCoy does not specify which of the § 2254(d) grounds he invokes, so his petition will be broadly construed and each ground will be considered. Because the state trial court was the last court to consider McCoy's ineffective assistance claim in a reasoned opinion, Doc. 18-10 at 32-38, the court will focus on its decision. *See Stern*, 812 F.3d at 609.

McCoy's claim fails because, far from "apply[ing] a rule different from the governing law set forth in [Supreme Court cases]," *Rann v. Atchison*, 689 F.3d 832, 835 (7th Cir. 2012) (quoting *Bell*, 535 U.S. at 694) (alterations in original), the state court correctly identified the governing rule for an ineffective assistance claim, set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Specifically, the state court stated:

> To establish a claim of ineffective assistance of counsel, a defendant first must establish that his counsel's performance was so deficient that his representation fell below an objective standard of reasonableness. Once a defendant establishes that his counsel's performance fellow below an objective standard of reasonableness, he also must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Doc. 18-10 at 34-35 (citing and quoting *Strickland*, 466 U.S. at 694) (citation omitted); *see Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015). Applying that rule, the state court concluded that McCoy's submission that "counsel's stipulation was tantamount to a guilty plea … is without merit," explaining that it was reasonable for counsel to consider "the stipulations to be preferable to the possibility of lengthy and detailed medical testimony … which could have highlighted the stipulated evidence and made it appear more important than it was." Doc. 18-10 at 36-37. The court also held that because "the evidence that was admitted through stipulation would have alternatively been introduced through live testimony," and that witness testimony had suggested that both Anderson and Chatman "were shot as they were *running away from the*

*petitioner*," McCoy had not shown prejudice beyond "mere speculation." *Id*. at 37. A "fairminded jurist" could easily agree with this conclusion, and so § 2254(d)(1) precludes this court from disturbing it on collateral review. (Section 2254(i) independently precludes McCoy's ineffective assistance challenge to his post-conviction counsel. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during … State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *London v. Clements*, 600 F. App'x 462, 466 (7th Cir. 2015) ("[Section] 2254 bars relief on the basis of poor performance by counsel in 'postconviction proceedings.'").)

It is not clear what factual findings McCoy might challenge under § 2254(d)(2), since he does not challenge the reasonableness of the stipulations but rather whether they, presented without testimony from a medical expert, were incomplete and misleading. Regardless, the state court's interpretation of the facts presented was reasonable. As noted, the court held that failing to present another medical expert did not prejudice McCoy because he did not contest the accuracy of the stipulations and also because other testimony established the inference—that McCoy shot Anderson and Chatman in the back—that McCoy felt the stipulations unfairly suggested. Doc. 18-10 at 37. As McCoy's post-conviction appellate counsel noted in his motion to withdraw, the "stipulation was inconclusive about whether the victims were attacking [McCoy] or running away," and "[t]here is no testimony about where the bullets entered the victims." Doc. 18-5 at ¶¶ 32, 34. In opposing that motion to withdraw, McCoy himself admitted that the stipulations were "inconclusive" concerning which of Anderson's wounds were entry wounds and which were exit wounds. Doc. 18-6 at 3. Nor, furthermore, has McCoy presented any evidence that a medical expert could or would have testified in such a way as to contradict the stipulations or cast them in a more favorable light. McCoy has thus not shown that either his

16

trial counsel's or his post-conviction attorney's performances "fell below an objective standard of reasonableness," 466 U.S. at 688, and so he is not entitled to habeas relief on his *Strickland* claim.

## Conclusion

For the forgoing reasons, McCoy's federal habeas petition is denied. Habeas Rule 11(a) provides that the district court "must issue or deny a certificate of appealability [('COA')] when it enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). For claims decided on the merits, the applicable standard is:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that … includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted); *see also Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014); *Lavin*, 641 F.3d at 832.

This court's denial of McCoy's federal habeas claims relies on settled precedents and principles. The application of those precedents and principles to McCoy's petition does not present difficult or close questions, and so the petition does not meet the applicable standard for granting a certificate of appealability. The court therefore denies a certificate of appealability.

September 16, 2016

United States District Judge